**BIG BUILDERS, INC., Appellant,**

**v.**

**Gary ISRAEL, et al., Appellees.**

**No. 96–CV–1331.**

District of Columbia Court of Appeals.

Argued Jan. 14, 1998.
Decided March 19, 1998.

---

Stanley H. Goldschmidt, with whom Emmett J. McGroarty was on the brief, Washington, DC, for appellant.

James Peelman, Bethesda, MD, for appellees.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

Plaintiffs-appellees Gary and Joel Israel sued defendant-appellant Big Builders, Inc. for the principal and interest due on a promissory note which Big Builders had issued to Gary Israel, and Gary in turn had assigned to his brother, Joel Israel. Big Builders answered in part by asserting fraud or misrepresentation in the transaction that gave rise to the promissory note. The trial court granted summary judgment in favor of the plaintiffs on the ground that Joel Israel was a holder in due course of the promissory note. We reverse, because there are disputed issues of material fact requiring resolution by a trial.

## I.

Gary Israel served as a real estate broker in connection with the purchase of certain real estate by Big Builders. As part of his commission, Gary received a promissory note in the amount of $23,752. The unpaid balance plus interest was due on September 18, 1991. On February 8, 1990, Gary executed a separate assignment of the promissory note to his brother Joel. The note itself was not endorsed to Joel, nor was the assignment attached to the note. The assignment stated that Joel had paid Gary $15,000 and other "good and valuable considerations" for the note. The only evidence in the record of this payment, however, is a photocopy of what appears to be a carbon copy duplicate check or deposit slip reflecting payment of $15,000 from Joel to Gary as a "Loan for Note." The plaintiffs explained their failure to produce the original cancelled check at trial by stating that there was a "delay in obtaining [it] and there is a substantial expense for having the bank produce it."

When the promissory note came due, Big Builders failed to make payment. The Israel brothers sued, and Big Builders defended partly by asserting that Gary Israel had misrepresented the quality of the underlying real estate investment. As pointed out, the

trial court rejected this defense as a matter of law after concluding that Joel Israel was a holder in due course of the promissory note.

## II.

■ Big Builders contends that summary judgment was improper because there are disputed issues of material fact relating to whether Joel Israel was a holder in due course. We agree.[1]

To attain the status of holder in due course of a negotiable instrument, one must take possession of the instrument for value, in good faith, and without notice, *inter alia,* that any party has a defense or claim in recoupment. D.C.Code § 28:3–302(a)(2) (1996).[2] Further, to become a "holder" (and hence a holder in due course) a transferee must take the instrument by a "negotiation," *id.* § 28:3–201(a), which, if the instrument is payable to an identified person, "requires transfer of possession of the instrument *and* its indorsement by the holder." *Id.* § 28:3–201(b) (emphasis added). "Indorsement" in turn means "a signature . . . that alone or accompanied by other words is made on an instrument for the purpose of . . . negotiating the instrument. . . . For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument." *Id.* § 28:3–204(a).

■ "[T]he physical 'holder' of an unendorsed note drawn to order is not a 'holder in due course.'" *Bonuso v. Shroyer Loan & Fin. Co.,* 37 A.2d 760, 761 (D.C.1944). Big Builders asserts that, at a minimum, there is a genuine factual dispute whether Gary Israel indorsed the promissory note. Indeed, as

Big Builders points out, the Israels do not even assert that there was an indorsement by signature on the note itself. They rely instead upon the written assignment, which refers to the note and contains Gary Israel's signature, and which they accordingly assert is the legal equivalent of "a paper affixed to the instrument" and "part of the instrument."

■ The primary obstacle to this contention is that, as the Israels concede, the assignment was never physically affixed to the note. "Affix" in its literal meaning is "to attach physically." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 36 (1971). The predecessor to current § 28:3–204(a) stated that an indorsement must be written "on the instrument or on a paper so *firmly affixed* thereto as to become a part thereof." D.C.Code § 28:3–202(2) (1994) (emphasis added). *See Manzon v. Greenwald,* 145 A.2d 575, 576 (D.C.1958) ("The law requires that indorsements be written on the instrument itself or upon a paper attached thereto."). The Israels do not contend that the present version represents a weakening of that requirement.[3] "A signature on a separate unattached paper is not an indorsement of the commercial paper. . . ." 5A ANDERSON, UNIFORM COMMERCIAL CODE § 3–202:48, at 498 (3d ed.1994). *See also* 4 W. HAWKLAND & L. LAWRENCE, UNIFORM COMMERCIAL CODE SERIES § 3–202:05 (1984); *Adams v. Madison Realty & Dev.,* 853 F.2d 163, 166 (3d Cir. 1988); *Tallahassee Bank & Trust Co. v. Raines,* 125 Ga.App. 263, 187 S.E.2d 320, 321 (1972). The Israels invoke what amounts to a notion of "incorporation by reference" that has no support in either the language of Title 28 or the relevant case law.

1. Summary judgment is proper if, in construing all facts and inferences in the light most favorable to the non-moving party, the record shows there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. The burden of showing the absence of any factual issue is borne by the moving party. On appeal we determine whether the trial court properly concluded that the movant has met its burden of proving that there was no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Atkins v. Industrial Telecomms. Ass'n,* 660 A.2d 885, 887 (D.C.1995) (citations omitted).

2. Under D.C.Code § 28:3–305(b), certain limited defenses operate against a holder in due course, but the defense asserted by Big Builders is conceded not to be one of them.

3. It appears that the Israels would be governed by the earlier provision in any case, since the transactions at issue occurred before the 1995 statutory revision which deleted the adverb "firmly." In this opinion we have cited the present version of Title 28, the District's Uniform Commercial Code. Neither party contends that the revisions to the Code made in 1995 affect the issues presented here. *See* D.C. Law 10–249, 42 D.C.Reg. 467 (1995).

■ Furthermore, an indorsement on a separate paper, called an allonge, may be used only when there is no room for the indorsement on the instrument itself. "When there is space on the commercial paper for an indorsement, an allonge cannot be used and an indorsement on an unnecessary allonge has no effect as an indorsement...." 5A ANDERSON § 3–202:49, at 498–9. *See also Crossland Sav. Bank FSB v. Constant*, 737 S.W.2d 19, 21 (Tex.Ct.App. 1987); *Pribus v. Bush*, 118 Cal.App.3d 1003, 1007, 173 Cal.Rptr. 747, 749 ( 4th Dist.1981); *Tallahassee Bank & Trust Co.*, 187 S.E.2d at 321. The Israels have never contended that the promissory note lacked sufficient room for an indorsement.

At the very least, therefore, there are genuine issues of material fact as to whether the promissory note was indorsed to Joel Israel.[4]

Still another issue in dispute is whether Joel Israel gave "value" for the promissory note. D.C.Code § 28:3–302(a)(2)(i). In response to Big Builders' discovery request for proof of that fact, the Israels produced no original bank records demonstrating a transfer of funds. The only proof they offered was a photocopy of either a deposit slip or a carbon copy of a $15,000 check from Joel to Gary which lacked a date-stamp or other indication that it was negotiated and deposited in a bank account. As explanation for this inadequate documentation, the Israels could say only that "there is a delay in obtaining [the original cancelled check,] ... there is a substantial expense for having the bank produce it," and Gary Israel was investigating how to obtain it. On this record, whether Joel gave value for the promissory note could not be decided in his favor on summary judgment.

■ Finally, Big Builders disputes whether Joel took the promissory note "in good faith." D.C.Code § 28:3–302(a)(2)(ii). On this issue, too, summary judgment was improper. "Good faith" means "honesty in fact in the conduct or transaction concerned." *Id.* § 28:1–201(19). "A holder satisfies the burden with respect to good faith by testifying that he or she took the instrument in complete innocence and by disclosing the circumstances of the transfer." 5A ANDERSON § 3–302:24, at 610. The circumstances of this putative transfer are clouded. Besides (1) the absence from the record of a cancelled check, (2) Gary's apparent continued interest (as plaintiff) in the transaction,[5] and (3) the close relationship of the parties to the assignment, *see* 5A ANDERSON § 3–302:38, at 626–27 (discussing "close connection doctrine" which "acts as an evidentiary rule by which the good faith of an assignee is tested"), there is the fact that Joel paid a purported $15,000 for the note, which represented a discount of almost forty percent of the amount that would have been owed on the date of the alleged transfer (combining the face amount and interest). Even then, the putative check or deposit slip showing payment by Joel states that the $15,000 is a *"Loan for Note"* (emphasis added). These circumstances raise a substantial question of good faith and must be explained before Joel Israel can be found to be a holder in due course. *See Beatty v. Franklin Inv. Co.*, 115 U.S.App. D.C. 311, 313, 319 F.2d 712, 714 (1963) (note purchased at discount of 33% percent was a "badge of fraud" and "had to be explained"); *Universal Acceptance Corp. v. Marzullo*, 260 A.2d 90, 91 (D.C.1969) (note purchased at 33 1/3% discount); *Hill v. Hawes*, 79 U.S.App. D.C. 168, 169, 144 F.2d

---

4. Indeed, there is a disputed issue of fact as to whether Joel Israel was even in possession—hence a "holder"—of the note at the time the lawsuit was filed. *See* D.C.Code § 28:1–201(20); *Johnson v. United Sec. Corp.*, 194 A.2d 132, 133 (D.C.1963) ("Without proof that appellee was in possession of the note at the time it commenced the action, it could not maintain the action as a holder of the note."). The complaint states that "[p]laintiff, Gary Israel ... is the note holder." The Israels assert that this was a "scrivener's error" ("Gary" should read "Joel"), but Gary Israel has never withdrawn as a plaintiff. While Gary's affidavit in the trial court states that "I transferred possession of the note to Joel Israel" on February 8, 1990, over five years before suit was filed, this assertion is not unequivocal given the Israels' position throughout that a valid transfer of the note took place by operation of the separate assignment. Whether Joel Israel actually possessed the note at the time of suit is another factual issue requiring resolution.

5. This is despite his undisputed assertion in contemporaneous bankruptcy proceedings that he had no interest in any negotiable instruments.

511, 512 (1944) (40% discount). *But see Russell v. Universal Acceptance Corp.,* 210 A.2d 834, 837 (D.C.1965) (25% discount "not so high as to prevent [party] from becoming a holder in due course").

For all of the above reasons, the trial court erred in granting summary judgment in favor of the plaintiffs.

*Reversed.*